UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                          **REPORT, RECOMMENDATION**
                                                   **AND ORDER**
v.

                                                   11-CR-00057-RJA-JJM-1
BERGAL L. MITCHELL, III,

                        Defendant.

_____

           This case was referred to me by Hon. Richard J. Arcara for supervision of all

pretrial matters ([6]).[1]  Defendant is charged in a 13-count Indictment [1] with conspiracy to

violate 18 U.S.C. §§666(a)(1)(B), 1163, 1168(b), and 1343 (Count I); theft or bribery from a

program receiving federal funds, in violation of 18 U.S.C. §§666(a)(1)(B) and 2 (Count 2); theft

by an officer of a gaming establishment on Indian lands, in violation of 18 U.S.C. §§1168(b) and

2 (Count 3); wire fraud, in violation of 18 U.S.C. §§1343 and 2 (Count 4); money laundering of

the funds derived from the conduct charged in Counts 2 and 4, in violation of 18 U.S.C.

§§1957(a) and 2 (Counts 5-12); and making material false statements to FBI agents, in violation

of §18 U.S.C. 1001(a)(2) (Count 13).  The Indictment also contains two forfeiture allegations

(id., pp. 26-29).

_____

[1]       Bracketed references are to the CM/ECF docket entries.

Before me are the remaining aspects[2] of defendant's pretrial motion ([53]) seeking

dismissal of the Indictment, discovery, and for leave to file additional motions.[3] Oral argument

on these aspects of defendant's motion was held on November 29, 2011 ([41, 45]) and January 3,

2012 ([51, 52]).  Following the January 3, 2012 oral argument, I permitted the parties to submit

supplemental briefing ([52, 57, 58, 72]).

For the following reasons, I order that defendant's  motions for discovery be

granted in part and denied in part, and that his motion for leave to file additional motions be

denied; and I further recommend that defendant's motions to dismiss the Indictment be denied.


## BACKGROUND

The Indictment makes the following allegations. Defendant was a member of the

Seneca Nation of Indians ("SNI") Tribal Council from November 2000 to November 2004,  a

member of the Board of Directors of the Seneca Gaming Corporation ("SGC") beginning in

approximately August 2002, and vice chairman of the Board of Directors of the SGC beginning

in approximately December 2004. Indictment [1], pp. 2-3, ¶¶2, 4.  In December 2004, the SNI

established the Seneca Niagara Falls Gaming Corporation ("SNFGC"), a wholly owned

subsidiary of the SGC.  Id., p. 2, ¶3.  SGC's and SNFGC's Charters prohibited "'any person with

---

[2]        Defendant's motion to suppress the evidence seized pursuant to the September 5, 2008
search warrant issued by Hon. H. Kenneth Schroeder, Jr. for the law office of Michael Dowd at 920
Center Street in Lewiston, New York (Cambria Affidavit [53], ¶43) was withdrawn, without prejudice to
renewal.  See November 29, 2011 Text order [41].

[3]        Defendant's motion to suppress his statements (Cambria Affidavit [53], ¶¶38-42) is
addressed in a separate Report and Recommendation.

an economic interest in any of the Company's activities' from serving as Board members". Id., p. 3, ¶4.

Defendant was approached by Timothy J. Toohey, a principal in an entity known as Western New York Golf Associates, LLC  ("WNYGA")[4] concerning the possibility of the SNI acquiring a parcel of land in Lewiston, New York to construct a golf course as an amenity to the Seneca Niagara Casino.  Indictment [1], p. 4, ¶¶7, 8.  After defendant told Toohey that he was interested in the proposal,  Toohey  contacted Michael J. Dowd, Esq., an attorney representing Old Creek Development, LLC ("OCD"), the owners of the parcel.  Id., pp. 3-4, ¶¶6, 8, 9.  In July 2004 Toohey advised defendant that OCD was asking $1.2 million for the parcel and that he envisioned transferring the parcel to WNYGA, and in turn selling it to SNI for an increased price. Id., pp. 4-5, ¶10.

In August 2004, defendant "advised Toohey that he . . .  expected to get paid out of Toohey's cut." Id., p. 5, ¶11.  When Dowd suggested to Toohey that the  "'consulting fee or finders fee'" he was looking to collect would have to come from the buyer, Toohey responded by e-mail and, referring to defendant, stated that he has "'the ability to sell the idea to the Nation and that ability may be unique to them.  It is that uniqueness that create's [sic] value, not as a finder's fee or commission but as having sufficient influence to bring about the deal'", and that his "'interests, in all candor, are not exclusively to get a golf property for the casino spa hotel. They are driven by more capitalistic tendencies.'"  Id., pp. 5-6, ¶¶12-13.

---

[4]        The Indictment alleges that this entity was also known as "Western New York Gaming Associates, LLC".  Indictment [1], p. 4, ¶7.

Defendant advocated to the SNI Tribal Council for acquiring the parcel and it passed a resolution, supplied by defendant, identifying the seller of the parcel as WNYGA and stating that "'negotiations h[ad] resulted in a proposed purchase price not to exceed $2.1 million'". Id., pp. 6-8, ¶¶14, 16-18. However, a dispute arose after Dowd learned that the SNI was unwilling to permit him to retain rights to develop housing as part of the project, and he contacted Barry Snyder, President of the SNI, concerning the dispute. Id., p. 8, ¶¶21-22. It was then agreed between Dowd and defendant that the parcel would be sold directly from OCD to the SNI, that OCD would receive $1.4 million for the parcel (which included $200,000 for Dowd's agreement to forego his housing development rights), that Dowd would pay Toohey $700,000 pursuant to a consulting agreement, and that Dowd would advise Snyder that the issue was resolved. Id., pp. 9-10, ¶23.

Between June 2005 and February 2006 defendant, Dowd and Toohey had discussions concerning their respective shares upon closing. In addition to defendant receiving $250,000 from the amounts paid to Toohey under the consulting agreement, defendant's wife, Rachel Mitchell, was to receive $90,000 from Dowd "so that she could 'represent' Dowd in his future efforts to construct the golf course clubhouse." Id., p. 12, ¶30. Consistent with this arrangement, after the sale was consummated, $248,000 was distributed from Dowd to an account opened by defendant in the name of Barry S. Halftown (defendant's half-brother), d/b/a/ SMOKE-SPIRITS.COM, and $90,0000 was distributed to defendant's wife's account. Id., pp. 7, 13, ¶¶15, 34. During the relevant time period, defendant failed to "disclose his personal financial interest in [this] transaction to the SNI, the SGC, or the SNFGC". Id., p. 13, ¶36.

## ANALYSIS

**A.      Motion to Dismiss Counts 1(d) and 4 through 12 for Lack of Subject Matter Jurisdiction**

Defendant moves to dismiss these counts to the extent that they allege violations of 18 U.S.C. §1343 ("Fraud by wire, radio or television") for lack of subject matter jurisdiction ([53], ¶¶8 - 12). Defendant bases this portion of its motion upon 18 U.S.C. §§1152 and 1153, which deal with federal court jurisdiction over crimes committed on Indian land.

Defendant argues that §1152 "does not apply to 'offenses by one Indian against the person or property of another Indian' . . . .  It further does not apply where one has already been punished by 'the law of the local tribe' or the offense is reserved by treaty to be exclusive Indian jurisdiction" (id., ¶11). "Further, none of the enumerated offenses in §1153(a) . . . address the §1343 prohibited conduct, which is 'to devis[e] and intend[] to devise, a scheme and artifice to defraud.' As a result, this Court is thus without subject matter jurisdiction to preside over a prosecution of the §1343 counts." Id., ¶12.

I disagree. "§1152 relates only to federal enclave law - law in which the situs of the offense is an element of the crime . . . . [It] does not apply to violations of laws of nationwide applicability that constitute federal crimes regardless of where committed." United States v. Begay, 42 F.3d 486, 498 (9th Cir. 1994)**,** cert. denied, 516 U.S. 826 (1995). Likewise, "§1153 . . . deals only with the application of federal enclave law to Indians and has no bearing on federal laws of nationwide applicability that make actions criminal wherever committed." Id. at 498.

Unlike the "enclave laws", in which the location of the crime is itself an element of the offense,[5] the location of the crime is not an element of 18 U.S.C. §1343.

In any event, "jurisdictional issues arise only where crime occurs on Indian territory". Markiewicz, 978 F.2d at 801. Thus, where the "offenses did not occur solely 'within the Indian country' . . . the district court [may] properly exercise[ ] jurisdiction over the defendants". Id. at 802.  As the government points out, "there were events in the 1343 and the conspiracy to commit 1343 that occurred on the reservation, we concede that to the Court. But, on the other hand, there are many, many events in those particular offenses, the conspiracy and substantive offense, which occurred far off the reservation." Transcript of oral argument [64], p. 77.

For these reasons, I recommend that the portion of defendant's motion seeking dismissal of the indictment for lack of subject matter jurisdiction be denied.

**B.      Motion to Dismiss Counts 1 through 12 as Facially Insufficient**

Defendant argues that "the allegations of the first 36 paragraphs and the 12 overt conspiracy acts, even if true . . . , do not present a prima facie case for the required affirmative theft-related conduct that §1163, §666(a)(1)(B) and §1168(b) all require" (Cambria Affidavit [53], ¶19); that the government's theory of the case runs afoul of Skilling v. United States,

---

[5]        For examples of such statutes, s*ee*  United States v. Markiewicz, 978 F.2d 786, 797 (2d Cir. 1992), cert. denied, 506 U.S. 1086 (1993).

__U.S.__, 130 S.Ct. 2896 (2010) (id., ¶23); and that the Indictment fails to allege "a direct

responsibility on [defendant's] behalf to be a custodian of the SNI's funds" (id., ¶24).[6]

### 1.      Theft Allegations

Without citation to any case authority, defendant argues that "the allegations [of

the Indictment] suggest, at worst, that an economic conflict of interest existed in [defendant]

participating in the land deal" (Cambria Affidavit [53], ¶20) but that "none of the 36 paragraphs

of factual allegations or 12 overt conspiracy acts in the Indictment, together or combined, present

a prima facie case for the required affirmative theft-related conduct that §1163, §666(a)(1)(B)

and §1168(b) all require." Defendant's Amended Reply [39], p. 6.  In response, the government

argues, inter alia, that defendant's motion which "simply concludes without citation to any

precedent, that the indictment is invalid because it fails to allege an 'affirmative theft,' should

itself, be denied for vagueness." Government's Corrected Response [40], p. 15 (emphasis in

original).

18 U.S.C. §1163, alleged in Count 1, applies to "[w]hoever embezzles, steals,

knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to

be misapplied, any of the moneys . . . belonging to any Indian tribal organization or intrusted to

the custody or care of any officer, employee, or agent of an Indian tribal organization".

Similarly, 18 U.S.C. §1168(b), alleged in Counts 1 and 3, applies to "[w]hoever, being an officer,

---

[6]      While defendant seeks dismissal of Counts 1 through 12 as being facially
insufficient (Cambria Affidavit [53], ¶16), he does not directly address Counts 5 through 12, which
charge defendant with violating the money laundering statute, 18 U.S.C. §1957(a), beyond their reliance
on the unlawful activity of Counts 2 and 4 of the Indictment. Indictment [1], p. 23.

employee, or individual licensee of a gaming establishment operated by . . . an Indian tribe . . . ] embezzles, abstracts, purloins, willfully misapplies, or takes and carries away with intent to steal, any moneys . . . of such establishment of a value in excess of $1,000".

By contrast, 18 U.S.C. §666(a)(1)(B), alleged in Counts 1 and 2, applies to an agent of an Indian tribal government who "corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization". The Indictment contains a series of introductory factual allegations that are incorporated by reference into Counts 1 through 4, which track the statutory language of the charged offenses.

"Generally, the indictment does not have to specify evidence or details of how the offense was committed." United States v. Mahaffy, 2006 WL 2224518, *11 (E.D.N.Y. 2006)(citing United States v. Carrier, 672 F.2d 300, 303-04 (2d Cir.1982), cert. denied, 457 U.S. 1139 (1982)). Nevertheless, "'if the specific facts' that are alleged 'fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation,' the indictment fails to state an offense." United States. v. Huet, 665 F.3d 588, 595 (3d Cir. 2012), petition for cert. filed on April 27, 2012. See United States v. Polychron, 841 F.2d 833, 834 (8th Cir.), cert. denied, 488 U.S. 851 (1988))("In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged. If the acts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed"). In making this determination, "a district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the

defendant committed the offense for which he was charged." United States v. Stock, 2012 WL 202761, *4 (W.D.Pa. 2012).

Significantly, defendant cites to no case authority - even after the government raised this issue in response - supporting his argument that the alleged conduct falls outside of the scope of activities encompassed by §§666(a)(1)(B), 1163 and 1168(b).  Under these circumstances, I conclude that defendant has not met his burden of establishing dismissal of these counts for failing to state an offense.  *See* United States v. Curtis, 2010 WL 2106168, *5 (S.D.N.Y. 2010) (although addressing a motion to withdraw a guilty plea based on the argument that the allegations of the indictment did not set forth any illegal conduct, the court noted that there is "'often [a] Herculean burden borne by a defendant seeking to dismiss an indictment'" pursuant to Rule 12(b)(3)(B)); Stock, 2012 WL 202761 at *8 (conduct alleged in an indictment "may 'fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation' if the 'specific facts' charged in such an indictment are clearly deficient and no reasonable juror could find [that they fall within the statute]").

In any event, defendant appears to concede that the government's fiduciary duty theory constitutes the affirmative theft-like conduct he argues is required by these statutes: "*[R]emoving the supposed 'fiduciary duty crime' from the equation*, the government does not in its 45 page response reveal any affirmative theft-like conduct that [defendant] participated in." Defendant's Amended Reply [39], pp. 5-6 (emphasis added).

By contrast to his arguments directed at the other counts of the Indictment, *in a footnote* defendant argues - without citation to any authority - that "the intent level for a §1343 theft-related scheme [is not] satisfied by the allegations therein." Cambria Affidavit [53],  p. 10

n.6.  For the reasons discussed above, I likewise conclude that defendant has not met his burden in seeking to dismiss this charge.

    **2.**    <u>**Skilling**</u>

        Alternatively, defendant argues that "[t]he government's theory, in effect, of a breach of fiduciary duty/crime . . . runs afoul" of <u>Skilling</u>.  Cambria Affidavit [53], ¶23.  The government admits that it intends to prove "that the defendant concealed his role in facilitating the land transaction that lies at the heart of the case from the SNI, the SCG and the SNFGC, and in doing so, breached what could be argued to be his fiduciary duties to these three entities", but argues that "these were only steps along the way in the defendant's scheme to defraud these entities out of the $338,000 that he ultimately received".  Government's Corrected Response [40], pp. 14-15.

        In <u>Skilling</u>, the Supreme Court limited the application of the honest services statute, 18 U.S.C. §1346, to "fraudulent schemes to deprive another of honest services through bribes or kickbacks", but rejected the government's argument that §1346 should also encompass "'undisclosed self-dealing by a public official or private employee— i.e., the taking of official action by the employee that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty.'" 130 S.Ct. at 2931-2932.  While the government's theory in this case does appear to tread close to the undisclosed self-dealing theory  the Supreme Court rejected in <u>Skilling</u>, "the indictment does not charge the defendant with the theft of honest services".  Government's Corrected Response [40], p. 16.

Moreover, even if defendant was charged with honest services fraud in violation of §1346, the allegations of the Indictment  do not run afoul of <u>Skilling</u>.  In <u>Skilling</u>, the defendant, an Enron executive, was "charged . . .  with conspiring to defraud Enron's shareholders by misrepresenting the company's fiscal health, thereby artificially inflating its stock price.  It was the Government's theory at trial that  [he] 'profited from the fraudulent scheme . . . through the receipt of salary and bonuses, . . . and through the sale of approximately $200 million in Enron stock, which netted him $89 million.'" 130 S.Ct. at 2934.   However, the Court concluded that he did not commit honest-services fraud because "[t]he Government did not, at any time, allege that [he] solicited or accepted side payments from a third party in exchange for making these misrepresentations." <u>Id</u>.

 By contrast, in this case the Indictment alleges that defendant "advised Toohey that he . . . expected to get paid out of Toohey's cut" and promoted the sale to the SNI without disclosing his financial interest, resulting him in receiving $338,000.  Indictment [1], pp. 5-6, 13, ¶¶11, 13, 34-36. "This was no mere failure to disclose a conflict of interest; rather, the official conspired with a third party so that both would profit from [the]  wealth generated".  <u>Skilling</u>, 130 S.Ct. at 2932.  Such allegations are similar to those in <u>McNally v. United States</u>, 483 U.S. 350 (1987), which <u>Skilling</u> described as "a  classic kickback scheme: A public official, in exchange for routing Kentucky's insurance business through a middleman company, arranged for that company to share its commissions with entities in which the official held an interest".  <u>Skilling</u>, 130 S.Ct. at 2932.

Therefore, I conclude that <u>Skilling</u> does not warrant dismissal of the Indictment.

### 3. Agency Allegations

Defendant argues that "by the terms of both the SGC and SNFGC Charters, these corporations were intended to be 'autonomous' and 'separate and distinct' from the SNI", and that "[w]ithout a definitive intent to be one entity . . . the government's charges fail to even present a direct responsibility on [defendant's] behalf to be a custodian of the SNI's funds." Cambria Affidavit [53], ¶24.  The government responds that "[n]one of the statutes under which he stands charged require this, and the indictment does not allege this."  Government's Corrected Response [40], p. 18.  I agree with the government.

On their face, none of the statutes which defendant is alleged to have violated require that he be a direct custodian of the SNI's funds, and defendant has cited no authority to support such an interpretation. Moreover, even if this was a necessary element of any of the offenses, the Indictment does allege that the SGC is wholly owned by the SNI and that the SNFGC is a wholly owned subsidiary of the SGC "subject to the control, operation, and management of the SGC".  Indictment [1], p. 2, ¶¶2-3.  Thus, any arguments concerning the autonomy of these entities would be an evidentiary matter for trial, rather than a basis for dismissal of the Indictment on its face.

Therefore, I recommend that this aspect of defendant's motion be denied.

**C.      Motion to Review Grand Jury Minutes and Dismiss the  Indictment**

Defendant asks the court to "review the grand jury minutes, and dismiss Counts 1 through 12" since  legally insufficient evidence was presented to the grand jury.  Cambria Affidavit [53], ¶25. Specifically, defendant requests that I focus on whether defendant's alleged concealment was "material" as the SNI knew the actual purchase price of the parcel prior to approving the transaction (Cambria Affidavit [53], ¶¶26-28), whether the government has met its burden "of showing the purported co-conspirators' agreement to commit all of the requisite elements" (id., ¶¶29-30), and whether defendant was acting as SNI's agent at the time of the transaction (id., ¶¶31-32).

Fed. R. Crim. P. ("Rule") 6(e)(3)(E)(ii) permits disclosure of  grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment".  "Disclosure of grand jury minutes is extraordinary relief that will be granted only upon a compelling showing of particularized need."  United States v. Castiglia, 1987 WL 30591, *1 (W.D.N.Y. 1987) (Elfvin, J.).  Defendant's speculative claims fail to establish his entitlement to the "'extraordinary relief' of disclosure of the minutes of the grand jury proceedings".  United States v. Dacunto, 2001 WL 13343, *10 (S.D.N.Y. 2001). See also Costello v. United States, 350 U.S. 359, 363 (1956):

> "If indictments were to be held open to challenge on the ground
> that there was inadequate or incompetent evidence before the grand
> jury, the resulting delay would be great indeed. The result of such a
> rule would be that before trial on the merits a defendant could
> always insist on a kind of preliminary trial to determine the
> competency and adequacy of the evidence before the grand jury."

Therefore, I deny defendant's request to review the grand jury minutes, and recommend that his motion to dismiss the Indictment on this basis be denied.

**D.      Motion to Dismiss Counts 1 through 4 as Multiplicitous[7]**

Defendant seeks to dismiss Counts 1 through 4 as multiplicitous "as they allege, in essence, the same conduct (purported criminal non-disclosure), charged in different forms". Cambria Affidavit [53], ¶33.  The government concedes that Counts 2 through 4 are multiplicitous, but it argues that the remedy is not dismissal; rather, it argues that the court can merge the mutiplicitous counts for purposes of sentencing, should defendant be convicted on these counts.  Government's Corrected Response [40], pp. 19-20.  I agree with the government.

"Multiplicity is the charging of the same crime in several counts of a charging document."  United States v. Moore, 811 F.Supp. 112, 116 -117 (W.D.N.Y. 1992)(Arcara, J./Foschio, M.J.)(citing Bell v. United States, 349 U.S. 81 (1955)). Even where the "counts are multiplicitous, [defendant] is not entitled to dismissal of . . . the charges. Instead, the proper remedy would be, after conviction on both counts, for the court to enter judgment on one count alone."  United States v. Jerome-Oboh, 883 F.Supp. 917, 924 (W.D.N.Y. 1995)(Arcara, J./Foschio, M.J.) (citing Ball v. United States, 470 U.S. 856, 865 (1985)).

With respect to Count 1, the government argues that "separate punishments are authorized where a defendant is convicted both of the substantive crime and for conspiring to commit that same crime."  Government's Corrected Response [40], p. 20.  I agree with the

---

[7]      Although the caption of this aspect of defendant's motion indicates that it also seeks disclosure of grand jury minutes (Cambria Affidavit [53], Point IV), this argument is absent from the body of defendant's motion, including the "wherefore" clause  (id., ¶¶33-34).

government.  "[I]t has been long and consistently recognized by the Court that the commission of

the substantive offense and a conspiracy to commit it are separate and distinct offenses."

Pinkerton v. United States, 328 U.S. 640, 643 (1946).

Therefore, I recommend that Counts 1 through 4 not be dismissed as

multiplicious.


**E.      Motion to Dismiss Counts 1 and 5 through 12 as Duplicitous**

Defendant moves to dismiss Counts 1 and 5 through 12 as duplicitous and for

disclosure of the grand jury minutes. Cambria Affidavit [53], ¶¶35-37.  "An indictment is

duplicitous if it joins two or more distinct crimes in a single count." United States v. Aracri, 968

F.2d 1512, 1518 (2d Cir.1992).  "[A] single count of an indictment should not be found

impermissibly duplicitous whenever it contains several allegations that could have been stated as

separate offenses . . . , but only when the failure to do so risks unfairness to the defendant."

United States v. Margiotta, 646 F.2d 729, 733 (2d Cir. 1981).

Defendant argues that Count 1, charging defendant with conspiracy,  "joins four

separate offenses".  Cambria Affidavit [53], ¶36.  However, "it is established law that a

conspiracy may be alleged to have multiple purposes." United States v. Parker, 165 F.Supp.2d

431, 447 (W.D.N.Y. 2001)(Arcara, J./Foschio, M.J.).  Thus, "the allegation in a single count of a

conspiracy to commit several crimes is not duplicitous, for the crime charged is the single offense

of conspiracy, however diverse its objects."  United States v. Benjamin, 72 F.Supp.2d 161, 173

(W.D.N.Y. 1999)(Elfvin, J.).  Defendant having failed to present any case law or substantive

argument as to why the Indictment falls outside of this general rule, I conclude that Count 1 is not duplicitous.

Defendant also argues that the money laundering charges (Counts 5 through 12) "join two separate substantive offenses: engaging in monetary transactions in property derived from violations of 18 U.S.C. §666(a)(1)(B) . . . and 18 U.S.C. §1343". Cambria Affidavit [53], ¶36. The government responds that pleading money laundering by one or more means is permitted by Rule 7(c), and that a special verdict will guard against the jury returning a verdict that is not unanimous. Government's Corrected Response [40], pp. 21-22. I agree with the government.

"A count may allege that . . . the defendant committed [the offense] by one *or more* specified means". Rule 7(c)(1) (emphasis added). "[D]efendant confuses the distinction between the offense and the underlying specified unlawful activity. The statute provides that money laundering may be committed in a variety of ways in that the funds for the financial transaction may come from one of a number of specified unlawful activities. 'When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any of those acts conjunctively charged may establish guilt.' . . . Here, each count alleges one financial transaction involving the laundering of proceeds from two different specified unlawful activities. The indictment properly pleads the specified unlawful activities in the conjunctive." United States v. Liersch, 2005 WL 6414047, *8 (S.D.Cal. 2005)(*quoting* United States v. Urrutia, 897 F.2d 430, 432 (9th Cir. 1990)). While defendant argues that "should there eventually be a conviction, the counts would not be a proper basis for sentencing, as the jurors may not have been unanimous as to any one of the charges"

-16-

(Cambria Affidavit [53], ¶ 37), this risk may be minimized by an "unanimity instruction requiring the jury to identify the specified unlawful activity or activities upon which it unanimously agrees and [by] provid[ing] the jury with a special verdict form." Liersch, 2005 WL 6414047 at *8.  Therefore, I recommend that defendant's motion to dismiss these counts as duplicitous be denied.

Defendant also requests disclosure of the grand jury minutes, arguing that "it is unknown whether [the grand jurors reached unanimity]"  Cambria Affidavit [53], ¶37.  In order to perform its constitutional function, the grand jury must make an "independent *factual* determination of the existence of probable cause for the essential elements of the charged offense".  United States v. Aquart, 2010 WL 4363414, *1 (D.Conn.2010) (emphasis in original); United States v. Daniels, 973 F.2d 272, 274 (4th Cir.1992) ("The Fifth Amendment guarantees that the grand jury consider and find all of the elements of the offense").

However, "unsupported assertions that abuses may have occurred are not sufficient to overcome the presumption of regularity surrounding grand jury proceedings". United States v. Olin Corp., 465 F.Supp. 1120, 1134 (W.D.N.Y.1979) (Elfvin, J.).  Since defendant has offered nothing other than speculation for its request to disclose the grand jury transcripts, this aspect of defendant's motion is denied.


**F.      Motion for a Bill of Particulars**

Defendant moves for particularization as to each count of the Indictment. Cambria Affidavit [53], ¶¶53-55.  In response, the government argues that no particularization is warranted because the Indictment "essentially lays out the entire scheme the defendant allegedly

used, within many cases, direct references to documents", it has "also turned over all of the

documentary evidence in this case to him", and defendant offers "[n]o explanation of how his

defense will . . . be impaired" without a bill of particulars.  Government's Corrected Response

[40], pp. 29-30.

The circumstances warranting a bill of particulars are limited.  A defendant may

obtain a bill of particulars only if the requested information is necessary "(i) to enable him to

prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution

for the same offense." United States. v. Persico, 621 F.Supp. 842, 868 (S.D.N.Y.1985). "In

deciding a motion for a bill of particulars, '[t]he important question is whether the information

sought is necessary, not whether it is helpful."  United States v. Conley, 2002 WL 252766, *4

(S.D.N.Y.2002). A bill of particulars "should not function to disclose evidence, witnesses, and

legal theories to be offered by the Government at trial or as a general investigative tool for the

defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

Significantly, "before a court will order the Government to provide a bill of

particulars, the defendant must make a 'particularized showing of need' for the information."

United States v. Gonzalez, 1994 WL 689065, *2 (S.D.N.Y.1994). The court "has the discretion

to deny a bill of particulars if the information sought by defendant is provided in the indictment

or in some acceptable alternate form." United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998).

"Whether to grant a bill of particulars rests within the sound discretion of the district court."

United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

While defendant devotes a significant amount of his motion to the particulars he

seeks, he offers little showing of need, merely arguing  in boilerplate fashion that "his ability to

prepare a defense will be . . . significantly impaired." Cambria Affidavit [53], ¶55. This is

insufficient to establish his entitlement to a bill of particulars. *See* <u>Gonzalez</u>, 1994 WL 689065

at *2.

In an attempt to remedy this deficiency, defendant argues for the first time in his

reply that the government has provided more than 2000 pages of discovery necessitating that he

"wade through voluminous discovery, only to ultimately engage in unnecessary guesswork in

preparing his defense regarding what is often technical potential evidence." Defendant's Reply

[39], p. 11, Point VIII. I recognize that "it is no solution to rely solely on the quantity of

information disclosed by the government; sometimes, the large volume of material disclosed is

precisely what necessitates a bill of particulars." <u>United States v. Bin Laden</u>, 92 F.Supp.2d 225,

234 (S.D.N.Y. 2000), <u>aff'd</u>, 552 F.3d 93 (2d Cir. 2008), <u>rehearing denied in part</u>, 553 F.3d 150

(2d Cir.), <u>cert. denied</u>, 129 S.Ct. 2778 (2009).

Here, however, the Indictment does not merely track of the statutory language of

the alleged crimes - instead, it is a "speaking indictment" (government's Corrected Response

[40], p. 30), which provides defendant with many particulars of the alleged criminal activities

and guidance concerning the discovery produced. *Compare with* <u>United States v. Bortnovsky</u>,

820 F.2d 572 (2d Cir.1987) ("providing mountains of documents to defense counsel" when the

indictment contained general allegations of fraud necessitated a bill of particulars). Therefore,

defendant's motion for a bill of particulars is denied.

**G.      Rule 16 Discovery and Notice of Intention Pursuant to Rule 12(b)(4)[8]**

In response to defendant's request for Rule 16 discovery, the government states

that it "has provided complete discovery to counsel, and in doing so, . . . has fully complied with

the mandates of subsections (A), (B), (D), and (E) of [Rule] 16(a)(1)."  Government's Corrected

Response [40], p. 37.  While defendant argues that "[i]t is not possible for defendant to know

whether or not this is an accurate statement", I am entitled to "rel[y] upon the presumption that

attorneys, as officers of the court, make truthful representations to the court."  United States v.

Melton, 2006 WL 1722379, *2  (S.D.Ill. 2006).  *See* United States v. Johns, 336 F.Supp.2d 411,

424 (M.D.Pa. 2004) ("The court is entitled to rely on the representations of counsel, as officers of

the court"); Theodore v. State of New Hampshire, 614 F.2d 817, 822 (1st Cir. 1980) ("Attorneys

are officers of the court and a judge has the right, in most circumstances, to rely on their

representations to him").

With respect to the discovery required by Rule 16(F) and (G), the government

states that "[t]o the extent that the government may seek to use a handwriting expert to aid in the

identification of the handwriting discovered on the placemat . . . , the government will provide

further information regarding such evidence and testimony when and if it become available."

Government's Corrected Response [40], p. 37.[9]  Based on the government's representations, this

---

[8]       The government's response provides its notice of the intent to use evidence as required
by Rule 12(b)(4)(B).  Government's Corrected Response [40], pp. 9-10.

[9]       I previously ordered the government to produce defendant's handwriting exemplars.
January 3, 2012 Text Order [52].  Defendant reserved his right to object to the timeliness of this
disclosure and to inspect the original placemat.  Id.

aspect of defendant's motion is denied as moot. However, the timing of the government's Rule 16(F) and (G) disclosures, if any, shall occur no later than the deadline set by the District Judge.

Defendant also seeks disclosure of Jencks Act material pursuant to 18 U.S.C. §3500 "at least 30 days in advance of trial". Cambria Affidavit [53], ¶66. The government responds that "[t]he transcripts of the grand jury testimony of any individuals who testify at trial will be turned over . . . consistent with the pretrial order we expect Judge Arcara to enter." Government's Corrected Response [40], p. 38. I conclude that pretrial production of such materials in accordance with the scheduling order to be issued by the trial judge is sufficient. Therefore, this aspect of defendant's motion is denied as moot.

**H.**     **Brady Material**

In response to defendant's motion for disclosure of material under Brady v. Maryland, 373 U.S. 83 (1963), the government states that "the only 'Brady material' [it] currently possesses is the criminal history of witness Timothy Toohey", but that it does "not have the details of the Grievance Committee's actions against Toohey", which are "likely available from the Fourth Department." Government's Corrected Response [40], p. 39.[10] It further states that "any Brady material that is in the possession of the government will be turned over to counsel when the §3500 material is made available" and that it "intends to fully comply with . . . its obligations under Brady". Id., p. 40.

---

[10]     To the extent the government comes into possession of such information, it should be disclosed as required by its Brady obligations.

These representations are generally sufficient to moot this aspect of defendant's motion.  However, to the extent the government attempts to limit its <u>Brady</u> obligation by stating that "it will comply with that obligation both as it relates to civilian witnesses and agents who may testify" (<u>id</u>.), I agree with defendant (defendant's Amended Reply [39], p. 14, Point X) that the government should disclose *any* <u>Brady</u> material, whether or not it involves a testifying witness.  *See* <u>United States v. Jackson</u>, 345 F.3d 59, 70-71 (2d Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 956 (2004) ("Although we have never expressly stated that the government must disclose exculpatory and impeachment materials pertaining to nontestifying witnesses, that conclusion flows ineluctably from our prior cases . . . .   A contrary conclusion would permit the government to avoid disclosure of exculpatory or impeachment material simply by not calling the relevant witness to testify").

The only specific item of possible <u>Brady</u> material at issue is Toohey's 2006 tax return, which was requested by defendant's counsel at the January 3, 2012 oral argument as part of the government's ongoing <u>Brady</u> obligations.  Cambria's correspondence dated  January 17, 2012 [57], p. 3.[11]  The government responds that it "neither agree[s] or disagree[s] that the return may constitute *Brady* material."  Bruce's January 20, 2012 correspondence [72], p. 2.[12]  Instead, it argues that "if counsel wants the return, it is his job, not ours, to obtain it from the Internal Revenue Service using the mechanism set out in 26 U.S.C. §6103." <u>Id</u>.

Contrary to the government's position, 26 U.S.C.  §6103 addresses the disclosure of tax returns to federal officials, not to a third-party defendant.  Thus, if the government

---

[11]      Since this document is not paginated, citations are to the CM/ECF numbering.

[12]      This document is also not paginated.

determines that disclosure of the tax return falls within its <u>Brady</u> obligations, it must be

disclosed consistent with any confidentiality restrictions imposed by statute.

Therefore, this aspect of defendant's motion is denied as moot, except to the

extent that it seeks the government's <u>Brady</u> obligation to encompass both testifying and

nontestifying witnesses.

**I.      Motion for Identity of Informants**

The government responds that "no informants were used in this case".

Government's Corrected Response [40], p. 40, Point XI.  Therefore, this aspect of defendant's

motion (Cambria Affidavit [53], ¶¶72-76) is denied as moot.

**J       Motion for Pretrial Disclosure of Fed. R. Evid. 404(b) Material**

The government responds that it "does not have any so-called 404(b) evidence

that it might seek to offer against the defendant" (Government's Corrected Response [40], p. 42,

Point XII), but does not otherwise oppose this aspect of defendant's motion.  Therefore, this

aspect of defendant's motion (Cambria Affidavit [53], ¶7) is denied as moot.  However, if the

government learns of any evidence encompassed by Fed. R. Evid. 404(b), it shall promptly be

disclosed to defendant.

**K.      Motion to Search Personnel Files of Agents Who Will Testify**

The government responds that "prior to trial [it] will cause a search to be made of

the personnel files of the agents who will testifying [*sic*] for instances where they have been

found to have engaged in misconduct and/or disciplined, and any information found pursuant to these searches will either be turned over to counsel or, where it is unclear if the information constitutes *Brady* material, to the District Judge".   Government's Corrected Response [40], pp. 42-43, Point XIII.   I conclude that this representation is sufficient to  moot this aspect of defendant's motion.  Therefore, this aspect of defendant's motion is denied.


**L.      Motion for Preservation of Evidence**

The government responds that "it has been and will be done in this case". Government's Corrected Response [40], p. 43, Point XIV.  Therefore, this aspect of defendant's motion (Cambria Affidavit [53], ¶¶79-80)  is denied as moot.


**M.      Motion for Disclosure of Fed. R. Evid. 807 Residual Exception Statements**

The government responds that "it does not have any statements it may seek to offer under this rule" (Government's Corrected Response [40], p. 44), but does not otherwise oppose this aspect of defendant's motion.  Therefore, this aspect of defendant's motion (Cambria Affidavit [53], ¶81) is denied as moot.  However, if the government does later intend to offer a statement encompassed by Fed. R. Evid. 807, it shall promptly notify defendant of its intent to offer the statement.

**N.**     **Motion for Leave to File Additional Motions**

This aspect of defendant's motion (Cambria Affidavit [53], ¶84) is denied,

without prejudice to the possibility of additional motions in the future, upon a showing of good

cause for why they were not timely asserted. *See* Rule 12(e).

## CONCLUSION

For these reasons, I order that defendant's  motion for pretrial disclosure of <u>Brady</u>

material be granted to the extent it seeks the government's <u>Brady</u> obligation to encompass both

testifying and nontestifying witnesses, but otherwise order that defendant's discovery motions

and motion for leave to file additional motions be denied; and I further recommend that

defendant's motions to dismiss the Indictment be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report,

Recommendation and Order must be filed with the clerk of this court by August 16, 2012

(applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)).  Any requests for

extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . .

waives any right to further judicial review of [this] decision".   <u>Wesolek v. Canadair Ltd.</u>, 838 F.

2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal</u>

<u>Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: July 30, 2012

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge